E-FILED on    4/23/12

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICHARD GALVAN,<br><br>Petitioner,<br><br>v.<br><br>JAMES YATES, Warden Pleasant Valley State Prison,<br><br>Respondent. | No. C-06-04143 RMW<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS<br><br>**[Re Docket No. 1]** |

## I. BACKGROUND

Richard Galvan ("Galvan"), a state prisoner incarcerated in Pleasant Valley State Prison, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the petition should not be granted. Respondent filed an answer addressing the merits of the petition and Galvan filed a traverse. The court has reviewed the papers and the underlying record. For the reasons stated below, the petition for writ of habeas corpus is denied.

**A.    Procedural Background**

On October 22, 2003, a jury in the Superior Court of Santa Clara County convicted Galvan of (1) rape by use of force or fear pursuant to Penal Code §§ 264.1 and 261; (2) assault with intent to penetrate with a foreign object pursuant to Penal Code § 220; (3) aiding and abetting an oral copulation in concert pursuant to Penal Code § 264.1 and 288a(d); (4) rape while the victim was

1  intoxicated pursuant to Penal Code § 261(a)(3); (5) digital penetration while the victim was
2  intoxicated pursuant to Penal Code §289(e); and (6) aiding and abetting an act of oral copulation
3  while the victim was intoxicated pursuant to Penal Code § 288a(i).  Galvan was sentenced to 16
4  years in prison.  Galvan appealed, and the California Court of Appeal affirmed his convictions in an
5  unpublished opinion on April 13, 2005.  The California Supreme Court denied a petition for review
6  on July 13, 2005.  Galvan filed the instant action seeking a federal writ of habeas corpus on July 3,
7  2006.

**B.    Factual Background**

On the evening of October 13, 2000, 14-year-old "Lucy Doe" and her older sister Maria were attending a party at 2448 Renfield Way, San Jose, California.  Reporter's Transcript ("RT") 307. Maria admitted she brought beer to the party, but Lucy testified her sister did not bring any alcohol to the home.  RT 326, 358.  According to Lucy's testimony, she did not drink alcohol apparently offered to her during first two hours because her sister told her not to, but she did smoke marijuana three or four times.  RT 359, 417.   There were between 15 and 20 people at the house.  RT 253. Lucy knew several people at the party including Jose Mancera and Hijinio Haro.  RT 293.  Lucy had not met Galvan before but had "seen him around" and testified that he tried to "come on" to her at the party, but she rejected him twice.  RT 377.  Lucy testified that she did not want to have sex with Mancera or Galvan.  RT 392.  At some point during the evening Lucy went across the street to use the phone at the library across from the Renfield house.  RT 363, 377 415.  Maria did not see Lucy again until later the next morning at the hospital.  RT 313.

After returning from using the phone, Lucy began to drink alcohol.  She had two shots of Jack Daniels whiskey and washed it down with beer.  RT 385.  She also testified that she felt "high" from the marijuana and that she did not remember anything that happened after she drank the alcohol.  RT 390, 468.  Her last memory of the night was sitting on top of a car talking to Galvan, Mancera and Haro.  RT 391.

At approximately 1:30 a.m. Brian Wilde was walking in the park and he heard moaning from some bushes.  RT 160-161.  It sounded female and was an unpleasant but "sexual" moan.  RT 161, 195.  Wilde heard loud male voices saying, "bitch," "slut," "shut up" and "you whore."  RT 177.

Shining his flashlight toward the bushes Wilde saw four males get up and run away. RT 173, 179. In the clearing, Wilde saw a girl lying on the ground with some of her clothing around her neck and her arms behind her back. RT 214, 221. Wilde covered the girl with his jacket and called the police. RT 227. The girl, Lucy, was eventually taken to the hospital and received medical treatment. When an officer later canvassed the scene he found a used condom, an empty condom wrapper, an unopened condom, some women's clothing, beer cans, and a nearly empty Jack Daniels whiskey bottle. RT 288.

According to Galvan's testimony, he and Lucy met at the party and at some point in the night walked across the street to the park together with some other boys, including Mancera and Haro. RT 1077. He testified that Lucy took two shots of Jack Daniels and washed it down with beer. RT 385, 468. Galvan said he had 11 beers on the evening of the incident and was pretty drunk. RT 571. Once at the park, Galvan testified Lucy and Mancera began "playing touchy touchy" and eventually walked into the bushes together. Galvan could hear what he called a "sexual moan." RT 1081. Galvan testified Mancera then came out of the bushes and told Galvan to "go for it." RT 1079-1081. Galvan went into the bushes, he kneeled down next to Lucy and began talking to her. RT 1084. He testified she responded "what's up," so he kissed her and she kissed back. RT 1084. Galvan lay on top of her and testified that he put his finger inside her vagina. RT 1084. Galvan testified that she did not respond or resist, that he believed she had consented, and that he had sexual intercourse with her. RT 1086, 1087. Galvan testified that he was unsure whether Mancera had his penis in Lucy's mouth when he was having intercourse with her but he had the impression that occurred. RT 1107.

The police interviewed Haro at the time of the incident. Haro knew Lucy from school and according to Haro after drinking and hanging out, Lucy went into the bushes with Mancera. At some point Mancera came out, approached Haro and encouraged him to "go check it out." RT 525. Together Haro, Mancera and four or five other boys went to the clearing to look through the bushes. RT 525. According to Haro's initial statement made to the police three days after the incident, he saw Galvan having sex with Lucy, her eyes were closed, she was not moving and was making inarticulate distressful sounds. RT 527, 529. Galvan told Lucy to "shut up" slapped her, and told Mancera to "put his dick in her mouth to shut her up" and Mancera did so. RT 528, 529. Shortly

1  thereafter the boys saw a flash of light and all ran away.  *Id*.  At trial, Haro testified and claimed that
2  Lucy was "loving getting fucked" by both Galvan and Mancera, denying his earlier statements to the
3  officer.  Following Haro's testimony, the attorney general conducted an investigation, which
4  revealed that Haro had been threatened and told he would be shot for being a "snitch" if he testified
5  and told the truth at Galvan's trial.

      **C.**      **Legal Claims**

7        Galvan asserts two grounds for federal habeas relief.  First, he claims that the trial court's
8  exclusion of the evidence of Lucy's prior sexual conduct with other men and possession of condoms
9  on the night of the charged incident was prejudicial and deprived petitioner of his due process rights.
10  Specifically, under Evidence Code section 1103(c), although evidence of Lucy's sexual conduct with
11  others is not admissible to prove her consent, petitioner contends that this section does not bar
12  evidence of sexual conduct of the victim to attack her credibility or demonstrate modus operandi.
13  Further, petitioner contends Lucy's prior sexual acts with Mancera were relevant to her consent to
14  Mancera and therefore specifically relevant to the aiding and abetting charges and in concert crimes
15  for which petitioner was convicted.

16        Galvan also claims he was entitled to introduce evidence that Lucy possessed and distributed
17  condoms on the night of the incident because it logically supports the inference that the sexual
18  conduct with Galvan was not against her will.  Galvan contends the trial court deprived him of due
19  process by excluding evidence of Lucy's prior sexual conduct and evidence not amounting to sexual
20  activity that strongly supported Galvan's defense.

21        Second, petitioner claims the deprivation of the right to question Haro about his prior sexual
22  conduct with Lucy violated his right to cross-examine witnesses against him.  Specifically petitioner
23  challenges the court's preclusion of questioning Haro regarding his prior consensual sex with Lucy.
24  Petitioner claims this was a constitutional error because the Sixth and Fourteenth Amendments
25  guarantee the right of an accused to confront witnesses against him.  Galvan contends that had
26  defense counsel been permitted to conduct a cross-examination of Haro, a reasonable jury might
27  have received a different impression of Haro's credibility and why he told the police a different story
28  initially.

## II.  ANALYSIS

**A.   Legal Standard**

This court may entertain a petition for a writ of habeas corpus "[o]n behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which provides a "highly deferential" standard toward the state court rulings and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002) (per curiam).

A federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000).  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of section 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The federal court on habeas review may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. *Id.* at 411.

A federal court making the "unreasonable application" inquiry should ask whether the state court's application of federal law was "objectively unreasonable." *Id.* at 410. The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Rhoades*, 354 F.3d 1101, 1109 (9th Cir. 2004).  The court must be left with a firm

1  conviction that the determination made by the state court is wrong and the one urged by petitioner is
2  correct. *Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000) (quoting *Van Tran v. Lindsey*, 212
3  F.3d 1143, 1153-54 (9th Cir. 2000)).  In determining whether the state court's decision is contrary to,
4  or involved an unreasonable application of, clearly established federal law, a federal court looks to
5  the decision of the highest state court to address the merits of a petitioner's claim in a reasoned
6  decision.  *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  The petitioner bears the
7  burden of showing that the state court's decision was unreasonable.  *Woodford*, 537 U.S. at 25.

**B.     Evidence of Victim's Recent Sexual Activity**

     **1.     Standard for Admission of Evidence**

10  A person in custody pursuant to the judgment of a state court can obtain a federal writ of
11 habeas corpus only on the ground that he is in custody in violation of the Constitution or laws or
12 treaties of the United States.  28 U.S.C. § 2254(a).  "A violation of state evidence rules is
13 insufficient to constitute a due process violation." *Randolph v. California,* 380 F.3d 1133, 1147 (9th
14 Cir. 2004).  To be a violation the decision to exclude evidence must have "rendered the trial so
15 fundamentally unfair as to violate due process." *Id*.  In order to grant relief, this court must find that
16 the absence of fairness fatally infected the trial; the acts complained of must be of such quality that
17 they necessarily prevented a fair trial. *Id.*

18  By motion, petitioner sought to introduce evidence of Lucy's recent sexual conduct,
19 specifically, evidence that Lucy had consensual sexual relationships while drinking, in the same park
20 location, with Haro and Mancera the week before the charged incident.  The prosecution argued that
21 under Evidence Code section 1103, the sexual intercourse with Haro was irrelevant to the case
22 against Galvan, and the sex with Mancera was likewise irrelevant to Galvan's case because it was
23 not sex with Galvan.

24  Petitioner contends that the evidence of Lucy's recent sexual conduct was relevant in
25 showing Lucy's consent to sex with Mancera, which, according to defense counsel, was critically
26 relevant to Lucy's consent to have sex with Galvan.  Prior to trial, the prosecution filed a motion in
27 limine seeking to exclude, pursuant to California Evidence Code section 1103, evidence regarding
28 Lucy's sexual experiences.  Galvan's defense counsel filed a motion to cross-examine Lucy about her

prior sexual conduct and proffered the following in support of the motion: (1) Lucy's friend Daniel Lejander would testify Lucy had said she had consensual sex with Mancera and Haro a week before the incident that gave rise to this case at the park across from the Renfield house; (2) Lucy's older sister Maria would testify Lucy had "messed around" with Mancera and had consensual sex with Haro in the past; and (3) Lucy would testify that the week before the incident she had sex with Haro and would have had sex with Mancera except her sister interrupted them.  RT 62, Court Transcript ("CT") 422-425.  Defense counsel argued the evidence was relevant to Lucy's consent, credibility and modus operandi under Evidence Code sections 782 and 1103, and that the probative value outweighed the risk of undue prejudice.  RT 425-529.  After conducting a balancing test under California Evidence Code section 352, the trial court found that the probative value was "outweighed by the prejudicial effect" and that the evidence was not relevant from the totality of the circumstances.  RT 120.  The court granted the prosecution's motion to exclude the evidence.

California Evidence Code section 210 defines relevant evidence as "evidence including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." Subject to statutory exception "all relevant evidence is admissible."  *People v. Mizchele*, 142 Cal. App. 3d. 686, 690 (1983), citing Evidence Code section 351.  A criminal defendant has a federal constitutional right to present a defense.  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  However, a defendant "does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  *Montana v. Egeloff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).  The exclusion of evidence does not violate the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Patterson v. New York*, 432 U.S. 197, 201-02 (1977)) (internal quotations omitted).

"The Supreme Court has recognized that a state has a legitimate interest in protecting rape victims against unwarranted invasions of privacy and harassment regarding their sexual conduct." *Wood v. Alaska*, 957 F.2d 1544, 1549 (9th Cir. 1992) (citing *Michael v. Lucas*, 500 U.S. 145 (1991)).  Evidence Code section 1103(c)(1) provides, that in a prosecution for specified charges,

"opinion evidence, reputation evidence, and evidence of specific instances of the complaining witness'[s] sexual conduct . . . is not admissible by the defendant in order to prove consent by the complaining witness" unless the evidence is of the "complaining witness' sexual conduct with the defendant." Code § 1103(c)(5). The code section allows the admission of such evidence to attack the complaining witness's credibility if the procedures outlined in section 782 are followed including a balancing test pursuant to section 352. However, the exception for sexual conduct "with the defendant" does not extend to a person who is not on trial in the current case. *People v. Keith*, 118 Cal. App. 3d 973, 977 (1981). Although the prosecution had evidence of prior sexual relations between Lucy and Mancera, since Mancera is not a defendant in the case, the evidence of the prior sexual conduct between Mancera and Lucy is irrelevant for purposes of determining the case against Galvan. The prosecution had no evidence to support that Lucy had sex with Galvan on a previous occasion.

When deciding whether the exclusion of evidence violates the due process right to a fair trial and the Sixth Amendment right to present a defense, the court balances the following five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. *Drayden v. White*, 232 F.3d 704, 711 (9th Cir. 2000).

Evidence may be excluded where its probative value is substantially outweighed by some other factor. Cal. Evid. Code § 352. Evidence can be excluded when its probative value is outweighed by the probability that its admission will necessitate undue consumption of time, be unduly prejudicial, confuse the issues or mislead the jury. *Id.* The rule itself does not offend due process, and the application of the rule to exclude the evidence in Galvan's case did not result in a due process violation. Here the probative value of the excluded evidence was limited because evidence of Lucy's prior sexual history had nothing to do with Galvan's guilt and had very little relevance to Lucy's truthfulness. Lucy's prior sexual history was not an issue to be evaluated by the trier of fact. The evidence that the 14 year-old victim had sexual intercourse might taint her reputation but proves nothing of relevance to her credibility or modus operandi. Although arguably

reliable and corroborated, the admission of evidence concerning Lucy's prior sexual conduct is not the sole evidence at issue.  Although Galvan argues the evidence of her sexual conduct goes to a major element of his defense of consent, Lucy's consent to sexual intercourse with other men is not a defense to Galvan's charge.  When going toward the issue of a modus operandi, "[O]ne prior occasion of sexual intercourse in vaguely parallel circumstances . . . falls well short of actually indicating such a modus operandi." *People v. Steele*, 210 Cal. App. 3d 67, 76 (1989).  Therefore, "even if evidence of her sexual history tended to show she was not naive, such evidence would not have impeached her credibility." *Darn v. Knowles*, 2003 U.S. Dist. LEXIS 8272 (N.D. Cal. May 13, 2003).  After consideration of the factors identified in *Drayden* and the prejudicial nature of the evidence, the decision of the trial court to exclude evidence of Lucy's prior sexual experiences did not violate petitioner's right to due process or right to a fair trial.  The state court's evidentiary rulgins were not unreasonable applications of, or contrary to, clearly established federal law and did not violate Galvan's right to due process.

### 2.      Ruling on Admissibility Not an Abuse of Discretion

The trial court has wide discretion in determining whether evidence is admissible and its determination must not be disturbed on appeal unless there is a clear showing that the court abused its discretion.  Cal. Const. Art. VI, § 13; Evid. Code, §§ 352-354; *People v. Hernandez*, 55 Cal. App. 4th 225, 239-40 (1997).  The trial court did not deprive Galvan of his right to a fair trial.

Finally, as there is no Supreme Court precedent concerning prior acts evidence admissible when considering conjunction with or aiding and abetting charges, the decision of the appellate court cannot be said to have contradicted or unreasonably applied clearly established federal law. *Alberni v. McDaniel*, 458 F.3d 860, 866-67 (9th Cir 2006).  Because habeas relief may not be granted unless the state court decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, there was no violation giving rise to a writ. 28 U.S.C. § 2254

The prosecution requested the court exclude evidence that Lucy possessed several condoms and gave her sister condoms on the night of the incident.  To the extent Lucy denied at trial that she intended to have sex with Mancera or Galvan, defense counsel asserted that the evidence of carrying

1  condoms would serve to attack her credibility.  Nonetheless, the trial court granted the prosecution's
2  motion to exclude the evidence on the grounds that "the probative value is outweighed by the
3  prejudicial effect" and the evidence was "incidental, collateral" and "irrelevant."   The court likewise
4  granted the prosecution's motion to exclude evidence that Lucy brought condoms to the party on
5  October 13, 2009.  RT 121.  The judge found that Lucy's possession of condoms "goes to something
6  incidental, collateral, irrelevant."  These decisions were not unreasonable applications of, or contrary
7  to, clearly established federal law.

**C.     Evidence of Haro's Bias and Threats**

   **1.     Standard for Admission of Evidence**

10       Galvan's counsel also challenges the trial court's exclusion of Haro's sexual conduct with
11  Lucy a week before the charged offense on the ground that the Sixth and Fourteenth Amendments
12  guarantee the accused's right to conduct cross-examination at trial.
13       The Supreme Court of the United States has rejected complete foreclosure of cross-
14  examination into potential bias.  *Davis v. Alaska,* 415 U.S. 308, 315-318 (1974).  However, a trial
15  court may limit the scope of cross-examination into the potential bias of a witness by applying
16  traditional rules of evidence.  *Delaware v. Van Arsdall*, 475 U.S. 674, 679 (1986).  The
17  Confrontation Clause guarantees only "an opportunity to effective cross-examination, not cross-
18  examination that is effective in whatever way, and to whatever extent the defense might wish."
19  *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (italics omitted).
20       Petitioner contends he was denied Constitutional right to cross-examine witnesses against
21  him when the court prevented questioning Haro about his sexual intercourse with Lucy the week
22  prior to the charged incident.  Petition at 30-34.  According to the petition, questioning Haro would
23  have shown Haro was concerned about his recent sexual intercourse with Lucy a week previously,
24  and was vulnerable to arrest and prosecution at the time he made his initial statements to the police,
25  thus impeaching the credibility of the initial statements.  Petition at 31.
26       However, the jury already knew that Haro was scared during his interview with the police
27  and further knew that Haro feared being arrested in connection with the charged incident.  RT 483-
28  484, 520, 546-547.  Knowing that Haro also feared arrest in connection with a prior consensual

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS—No. C-06-04143 RMW
AKT                                                  10

sexual encounter with Lucy would not have produced a significantly different impression of Haro's credibility concerning his initial statement to the police. *Van Arsdall*, 475 U.S. at 680. Moreover, given that Haro's initial statement to the police was overwhelmingly corroborated by other witnesses, it was unnecessary to introduce the evidence that he engaged in sexual conduct with Lucy, since it would not have made a significant change in the impression of the witness' credibility.

### 2. Ruling on Admissibility Not an Abuse of Discretion

The trial court has wide discretion in determining whether evidence is admissible and its determination must not be disturbed on appeal unless there is a clear showing that the court abused its discretion. Cal. Const. Art. VI, § 13; Evid. Code, §§ 352-354; *People v. Hernandez*, 55 Cal. App. 4th 225, 239-40 (1997). Given the trial court's broad discretion and no clear showing of abuse of discretion, the court's decision to exclude the evidence was not a violation of petitioner's right to confront and cross-examine an adverse witness.

**D.    Harmless Error**

In order to obtain habeas relief on the basis of an evidentiary error, a petitioner must show that the error was of a constitutional dimension and that it was not harmless. *Brecht v. Abrahamson,* 507 U.S. 619, 640 (1993). Galvan is required to show that the error had "'a substantial and injurious effect' on the verdict." *Dillard v. Roe,* 244 F.3d 758, 767 n. 7 (9th Cir. 2001) (quoting *Brecht,* 507 U.S. at 623). Galvan bears the burden of demonstrating prejudice under this test. *Castillo v. Stainer*, 997 F.2d 669 (9th Cir. 1993).

Had Galvan's counsel been allowed to (1) present evidence of Lucy's consensual sexual intercourse with Mancera and Haro a week prior to the charged incident, or (2) show Lucy carried condoms to the party, or (3) question Haro about his prior sexual conduct with Lucy, the jury still would have found Galvan guilty. The evidence was compelling that Galvan forcefully raped Lucy. At the time Galvan had sexual intercourse with Lucy she had consumed a large quantity of alcohol, was stumbling and slurring her speech. RT 383-86, 523-24, 539-40, 992-93, 1075, 1077-78, 1113, 1116-17. This established that Lucy was unable to resist due to her consumption of intoxicating substances. Testimony of witnesses, Lucy's injuries, the circumstances under which Lucy was

found, and Galvan's subsequent testimony all persuasively established that the sex was nonconsensual.  Further, evidence that Lucy was hit, called names and bound was adequate to establish force.  RT 220-221, 223, 251, 447-48, 528, 607, 611.  Therefore, exclusion of evidence of Lucy's prior sexual intercourse with Haro or Mancera, exclusion of evidence that she was carrying condoms, and preclusion of cross-examination of Haro concerning his prior sexual intercourse with Lucy to impeach did not have an injurious effect on the verdict and would have been harmless error.  As a result of the overwhelming evidence of Galvan's guilt, the jury would have reached the same verdict even with the evidence of Lucy's prior sexual activity.

Accordingly, the state court's decision rejecting this claim was not contrary to, or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

### III.  ORDER

For the foregoing reasons, the petition for a writ of habeas corpus is denied.  The clerk shall enter judgment for respondent and close the file.

### IV. CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling.  *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. § 2254 (effective December 1, 2009).  For the reasons set out in the discussion above, petitioner has not shown that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right [or] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly, a COA is denied.

DATED:      April 23, 2012

RONALD M. WHYTE
United States District Judge

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS—No. C-06-04143 RMW
AKT
13